IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SCOTT BRADEN, as parent and next friend of M     PLAINTIFF

v.     Case No. 3:10-CV-03118

MOUNTAIN HOME SCHOOL DISTRICT; CHARLES
SCRIBER, individually and in his official capacity as
Superintendent; DEBBIE ATKINSON, individually and as
Director of Special Education; MICHELLE MCWILLIAMS,
individually and in her official capacity as Principal
of Pinkston Middle School; LINDA WHITE, individually
and as Vice Principal of Pinkston Middle School; and
CASSIE FOWLER, individually and in her official capacity
as Teacher of the Alternative Learning Education Classroom     DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Currently before the Court are Defendants Mountain Home School District, Charles Scriber, Debbie Atkinson, Michelle McWilliams, Linda White, and Cassie Fowler's Motion for Summary Judgment (Doc. 15) and supporting documents, Plaintiff Scott Braden's Response (Doc. 25) and supporting documents, and Defendants' Reply (Doc. 31). Defendants move for summary judgment as to all of Plaintiff's claims, including claims based on violations of 42 U.S.C. §1983, Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act ("ADA"), and Title IX of the Education Amendments of 1972, as well as state law claims for negligence, intentional discrimination, and outrage. For the reasons set forth herein, Defendants' Motion for Summary Judgment (Doc. 15) is GRANTED IN PART AND DENIED IN PART.

**I. Background**

Plaintiff Scott Braden, on behalf of his minor child M, brings various federal and state law claims against Defendant Mountain Home School District, where M was enrolled as a student at all

times relevant to the facts asserted in the Complaint.  Plaintiff also brings claims against certain persons employed by Mountain Home School District ("MHSD"), including Charles Scriber, the school Superintendent; Debbie Atkinson, Director of Special Education; Michelle McWilliams, Principal of Pinkston Middle School; Linda White, Vice Principal of Pinkston Middle School; and Cassie Fowler, M's teacher.

For purposes of summary judgment, the Court views the facts in a light most favorable to the non-movant, Plaintiff.  *Canada v. Union Elec. Co.*, 135 F.3d 1211,  1212-13 (8th Cir. 1998) (citing *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir. 1983)).  M was first enrolled as a third grade student at MHSD on November 21, 2007, shortly after M and his father relocated to Arkansas from Colorado.  Upon enrolling M in school, M's father advised MHSD that M had been previously diagnosed with Attention Deficit Hyperactivity Disorder and Reactive Attachment Disorder Syndrome.  M had been receiving special education in a mainstreamed classroom setting in Colorado to address these conditions.  M's father also advised MHSD that he and his ex-wife had adopted M when M was three years old, and that prior to adoption, M had suffered sexual abuse while in foster care.

MHSD received a copy of M's Individualized Education Plan ("IEP") and behavior plan from his previous school in Colorado; however, after reviewing M's records, MHSD officials decided that M was not eligible for special education services.  Instead, on December 5, 2007, during M's third grade year, MHSD placed M in Nelson Wilks Elementary School's Pathways to Success classroom, an Alternative Learning Environment Classroom ("ALEC").  M's father was not happy about the placement.  He requested instead that M receive behavior therapy and counseling through special education services, similar to those M received in Colorado, and placement in a mainstreamed classroom environment, rather than the self-contained ALEC. MHSD did not accede to M's father's

wishes and kept M in the ALEC for the remainder of the school year.

At the beginning of M's fourth grade year, on August 29, 2008, M underwent a comprehensive evaluation conducted by MHSD. After the evaluation was completed, MHSD advised that M did not qualify for special education services because M's disabilities did not adversely impact his educational performance. M was promoted to the fourth grade, but M's father was told that M would be placed in an ALEC at Pinkston Middle School, along with fifth, sixth, and seventh graders, rather than in an elementary school classroom with other fourth graders M's age.[1] M's father once again objected to the placement, both because M would again receive his education in an ALEC and because M would be schooled with children who were older than M and potentially more socially and behaviorally advanced than M. M's father was worried that, considering M's emotional and behavioral disorders and past history of abuse, M was in danger of being bullied and easily influenced by older students in the middle school ALEC.

As the school year progressed, M's behavior apparently worsened and M's father continued to object to his placement. According to M's father, M was suspended multiple times and given detention for apparently escalating behavioral issues during the months of September and October of 2008. In February of 2009, a new student, GL, entered M's classroom. Over the course of the next several months of school, from approximately February to May of 2009, GL began exhibiting various inappropriate sexual behaviors in class, including periodically exposing his genitalia in class, simulating masturbation, and, on one occasion, placing his penis on the classroom overhead projector in front of the other students. M's father alleges that a teacher was at all times present in the classroom when these incidents involving GL occurred, and the incidents were reported to the

---

[1] All fourth graders who attend public school in the District go to Guy Berry Elementary.

teachers by students.  M's father further alleges that that no teacher or other MHSD official took meaningful action to stop GL's behaviors from continuing and to protect M even though MHSD knew that M was (1) an emotionally disturbed former victim of sexual abuse and (2) the youngest child in a class of students one to two grades higher than himself.

  M's father contends, and Defendants do not dispute, that in addition to the inappropriate sexual behaviors described above, there are other incidents in which M was specifically targeted for sexual abuse multiple times by GL in the ALEC and in the presence of students and at least one teacher.  M's father alleges that during science class on April 30, 2009, other students witnessed GL sexually assaulting M by forcing M's head into GL's genital area while a teacher was present in the classroom.  M's father reported this incident to M's teacher but states that he received no response.  On May 8, 2009, M's father notified the school resource officer about the inappropriate sexual behaviors of GL, but he again received no response.  Also on May 8, 2009, M exposed himself to another student in the bathroom and received disciplinary action.  On May 12, 2009, in the presence of a paraprofessional, GL pulled down his shorts during math class, exposed himself to M, and compelled M to perform oral sex on him, which M did while another student watched.

  The May 12 incident was reported to police by school officials.  The police report of the incident, which was submitted to the Court under seal (Doc. 20, Exhibit 3)[2], describes facts that, if proven to be true, may establish that some, if not all, of the individual Defendants had actual or constructive knowledge that M's classroom environment was potentially dangerous to M, as well as to other students, and that M's educational placement subjected him to the danger of being sexually abused or undergoing other emotional trauma.

---

[2] Statements contained within the police report were not taken as true as to the factual matters asserted, but were instead regarded as evidence of knowledge on the part of Defendants.

After the May 12 incident, M's licensed therapist wrote a letter to MHSD (Doc. 26-3), requesting that M be placed in an alternative classroom setting so that he would not have to return to the classroom where he was sexually abused. However, after a meeting held on May 18, 2009, with M's father present, it was determined that M would instead be provided with home-based education for four hours per week for the remainder of the fourth grade.

M rejoined the ALEC at the start of his fifth grade year, in the fall of 2009. Although the classroom's layout had been modified and GL had been removed from the class, for all intents and purposes, M's placement was identical to his placement the previous school year. The same paraprofessional that had been present in the classroom during both sexual assaults against M was again assigned to the ALEC. Defendant Fowler was again the lead teacher in the ALEC, as she had been the previous school year.

M's father filed a due process complaint on December 31, 2009, with the Arkansas Department of Education, alleging that MHSD had failed to provide M with a free appropriate public education pursuant to the Individuals with Disabilities in Education Act ("IDEA"). Following a series of administrative hearings on the matter, a hearing officer concluded on August 7, 2010, that MHSD had not complied with the IDEA's requirements by failing to implement M's Colorado-based IEP. (Doc. 15-1, p. 22). The hearing officer also found that MHSD had denied M a free appropriate public education in failing to identify M as a special education student. *Id.* The MHSD was ordered to hold an IEP conference for M and to place him in special education and related services. *Id.* Although the administrative hearing officer made a determination as to MHSD's compliance with the IDEA, the officer was without jurisdictional authority to rule on any of M's claims regarding school officials' failure to protect M from classroom sexual abuse.

On December 8, 2010, Plaintiff filed the instant Complaint in this Court, claiming that

Defendants violated M's constitutionally protected liberty interest in his bodily integrity and security, as well as M's right to due process, pursuant to the Fifth and Fourteenth Amendments and in violation of 42 U.S.C. §1983, by placing M in a middle school classroom environment that carried with it a known and immediate risk of harm to M. Plaintiff contends that Defendant MHSD violated §504 of the Rehabilitation Act by depriving M of public educational services offered to children without disabilities. Further, Plaintiff maintains that Defendants violated Title II of the ADA by discriminating against M due to his disability and excluding M from participation in public school services. Plaintiff also asserts claims against all Defendants pursuant to Title IX due to Defendants' deliberate indifference to known acts of discrimination against M on the basis of sex. Finally, Plaintiff brings state law tort claims for negligence, intentional discrimination, and outrage. In the discussion below, the Court will examine whether summary judgment is appropriate as to each of Plaintiff's claims.

## II. Legal Standard

In determining whether summary judgment is appropriate, the burden is placed on the moving party to establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). The Court must review the facts in a light most favorable to the party opposing a motion for summary judgment and give that party the benefit of any inferences that logically can be drawn from those facts. *Union Elec. Co.*, 135 F.3d at 1212-13.

## III. Discussion

### A. Section 1983 Claims

Section 1983 provides a federal cause of action for a plaintiff to sue "[e]very person who,

under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . ." 42 U.S.C. § 1983. A school district may be considered a "person" for purposes of §1983 liability. *Keckeisen v. Indep. Sch. Dist.*, 509 F.2d 1062, 1065 (8th Cir. 1975). A school district's employees are also "persons" under §1983 and may be subject to suit in both their individual and official capacities as follows:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.

*Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted).

In reviewing the Complaint and the evidence provided by the parties on Defendants' Motion for Summary Judgment, the Court finds that in the instant case, there are no material facts in dispute suggesting that MHSD had an unconstitutional official municipal policy that led to bullying, harassment, intimidation, and sexual assault against M. Therefore, Plaintiff's §1983 claim against MHSD must be dismissed. Along the same lines, since claims against the employees of a school district, in their official capacities, also require evidence of a policy or custom of the district that violated a student's rights, §1983 claims against the individual Defendants in their official capacities are also dismissed. *See Gorman*, *supra*, 152 F.3d at 914.

Plaintiff's individual capacity claims against Defendants Scriber, Atkinson, McWilliams, White, and Fowler, which allege personal liability against these individuals for actions taken in the course of their duties as school district employees, require different proof. "School district officials

can be liable under §1983 if they are deliberately indifferent to acts committed by a teacher that violate a student's constitutional rights. The plaintiff[] must show that the district officials received notice of a pattern of unconstitutional acts, demonstrated deliberate indifference to the acts, failed to take sufficient remedial action, and that such failure proximately caused the injury to the student[]." *Doe v. Gooden*, 214 F.3d 652, 955 (8th Cir. 2000) (internal citations omitted).

In general, a student's right to due process is not implicated when school officials fail to protect the student from the violent acts of another student. *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 732 (8th Cir. 1993) (public school had no constitutional duty to protect mentally retarded student who was raped in school by a student known to be violent and sexually assaultive, as "state-mandated school attendance does not entail so restrictive a custodial relationship as to impose upon the State the same duty to protect it owes to prison inmates"); *Lee v. Pine Bluff Sch. Dist.*, 472 F.3d 1026, 1030-32 (8th Cir. 2007) (no §1983 liability when a middle school student became gravely ill on a band trip, under school band director's supervision, and student was not taken to hospital). Likewise, a constitutional duty to protect does not arise by virtue of a child's special status as having a disability, as "it is 'the State's affirmative act of restraining the individual's freedom to act on his own behalf,' not the individual's own limitations, that gives rise to the constitutional duty to protect." *Dorothy J.*, 7 F.3d at 732 (citing *DeShaney v. Winnebago County Dept of Social Servs.*, 489 U.S. 189, 200 (1989)).

However, there are two exceptions to the general rule that the State has no duty to protect its citizens from private tortious conduct or acts of violence. The first exception, which the Court will refer to as the "in custody" exception, occurs "when the State takes a person into its custody and holds him there against his will." *DeShaney*, 498 U.S. at 199-200. The second exception, which the Court will refer to as the "danger creation" exception, occurs when the State "affirmatively places

a particular individual in a position of danger the individual would not otherwise have been in." *Dorothy J.*, 7 F.3d at 733 (citing *Wells v. Walker*, 852 F.2d 368, 370 (8th Cir. 1988), *cert. denied*, 489 U.S. 1012 (1989)). Plaintiff argues that both exceptions apply to justify the imposition of individual liability on Defendants Scriber, Atkinson, McWilliams, White, and Fowler.

The Court disagrees that the "in custody" exception applies here. The Eighth Circuit definitively concluded in *Dorothy J. v. Little Rock School District* that no custodial relationship exists between school and student that is analogous to the relationship between prison and inmate or mental institution and patient. *Id.* True involuntary confinement means that the State has assumed responsibility for all basic needs of the individual confined, including safety; however, in the case of a child who is legally obligated to attend school, ". . . state-mandated school attendance . . . does not render a child's guardians unable to care for the child's basic needs." *Id.* (internal citations omitted).

Despite the clear holding of *Dorothy J.*, Plaintiff argues that the "in custody" exception should apply in the instant case, due to the fact that M was required by MHSD officials to attend class in the middle school ALEC, rather than the elementary school ALEC with his same-aged or younger peers. In considering Plaintiff's attempt to distinguish M's situation from that in *Dorothy J.*, the Court is not convinced that requiring M to attend class at the middle school is analogous to the State confining an individual to prison or to a mental institution. The State's relationship with M is not transformed by virtue of the particular school M is required to attend; rather, the Eighth Circuit's precedent in *Dorothy J.* states that a school does not take a student "into custody" when the student reports for school each day. *Id.*

With regard to the "danger creation" exception, there is a five-part test that Plaintiff must meet in order to assert a valid claim. Plaintiff must prove that (1) M is a member of a limited,

precisely definable group; (2) the conduct of Defendants put M at a significant risk of serious, immediate, and proximate harm; (3) the risk was obvious or known to Defendants; (4) Defendants acted recklessly in conscious disregard of the risk; and (5) Defendants' conduct shocks the conscience. *Avalos v. City of Greenwood*, 382 F.3d 792, 799 (8th Cir. 2004). Having reviewed the briefs and evidence submitted by the parties, the Court finds that Defendants have failed to establish the absence of a genuine dispute of material fact with regard to the above factors.

Defendants assert the affirmative defense of qualified immunity with respect to Plaintiff's §1983 claim. "A state official sued in her individual capacity is entitled to qualified immunity so long as her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). "A right is clearly established when the 'contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Ordinarily, a school official is entitled to qualified immunity unless "a reasonable official would have recognized that the conduct constituted a violation," meaning that "a reasonable teacher [or administrator] . . . would understand that such conduct violates that right." *Id.* Here, Plaintiff asserts that M was subjected to multiple incidents of sexual abuse and sexual assault in his classroom in the presence of teachers and students and with school officials' knowledge. Plaintiff further asserts that M's clearly established rights to bodily integrity and to due process, pursuant to the Fifth and Fourteenth Amendments, were violated. The Court concludes that, viewing the facts in a light most favorable to Plaintiff and giving Plaintiff the benefit of any inferences that logically can be drawn from those facts, no qualified immunity applies to Defendants Scriber, Atkinson, McWilliams, White, and Fowler in their alleged conduct. The violations of rights asserted by

Plaintiff, if true, are certainly those that a reasonable school teacher or administrator would understand and recognize. Accordingly, summary judgment as to Plaintiff's §1983 claim against Defendants Scriber, Atkinson, McWilliams, White, and Fowler, in their individual capacities, is denied.

### B.  Section 504 of the Rehabilitation Act and Title II of the ADA

Plaintiff has asserted claims against all Defendants pursuant to §504 of the Rehabilitation Act and Title II of the ADA, which are similar in their protections for individuals with disabilities. Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall . . . be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. §794(a). Title II of the ADA "prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of the services, programs, or activities of a public entity." *Randolph v. Rodgers*, 170 F.3d 850, 857 (8th Cir. 1999). "[E]nforcement, remedies, and rights are the same under both Title II of the ADA and §504 of the Rehabilitation Act." *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 857 (8th Cir. 2000). "Where alleged ADA and §504 violations are based on educational services for disabled children, the plaintiff must prove that school officials acted in bad faith or with gross misjudgment." *Id.*

In reviewing the law concerning Plaintiff's §504 and ADA claims, the Court finds that no remedy exists against school officials in their individual capacities. *Alsbrook v. City of Maumell*, 184 F.3d 999,1011 (8th Cir. 1999), *cert. dismissed*, 529 U.S. 1001 (2000); *Doe v. Barger*, 193 F.Supp.2d 1112, 1116 (E.D. Ark. 2002). Nor does a remedy exist against school officials in their official capacities, as such claims are redundant to claims against the school district. *See Will v. Michigan Dep. of State Police*, 491 U.S. 58, 71 (1989). Accordingly, with regard to Plaintiff's §504

and ADA claims, these claims are dismissed as to Defendants Scriber, Atkinson, McWilliams, White, and Fowler, in both their individual and official capacities.

With regard to Defendant MHSD, the Court finds that Defendant has not established the absence of a genuine dispute of material fact with regard to whether school officials acted with bad faith or gross misjudgment. Therefore, summary judgment as to Defendant MHSD is denied with respect to Plaintiff's §504 and ADA claims.

### C. Title IX

No remedy exists against school officials in their individual capacities under Title IX. *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 610-11 (8th Cir. 1999). Neither does a remedy exist against school officials in their official capacities, as such claims are redundant to claims against the school district. *Will*, 491 U.S. at 71. Accordingly, Plaintiff's Title IX claim will be dismissed as to Defendants Scriber, Atkinson, McWilliams, White, and Fowler, in both their individual and official capacities. Defendant MHSD correctly points out that it can only be held liable under Title IX for student-on-student sexual harassment or sexual assault if MHSD were deliberately indifferent to qualifying discriminatory acts which occurred under its control. *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001). The Eighth Circuit has held that "a school district will only be liable for situations in which it 'exercises substantial control over both the harasser and the context in which the known harassment occurs.'" *Id.* (quoting *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 646 (1999). "Specifically, the school district's deliberate indifference must either directly cause the abuse to occur or make students vulnerable to such abuse, and that abuse must take place in a context subject to the school district's control." *Id.* (internal citation omitted).

The Court finds that Defendant MHSD has failed to establish the absence of a genuine

dispute of material fact with regard to Plaintiff's Title IX claim against MHSD, and summary judgment is denied as to that claim. There are factual disputes regarding whether MHSD had actual knowledge of the abusive situation experienced over a period of time by M and whether MHSD was deliberately indifferent to acts of harassment perpetrated by GL upon M and other ALEC students. If Plaintiff can prove that there was such harassment, and that it was so severe, pervasive, and objectively offensive that it prevented M from access to an educational opportunity or benefit, then Plaintiff may be entitled to damages pursuant to Title IX. Therefore, as to MHSD only, summary judgment for Plaintiff's Title IX claim is denied.

### D. State Tort Claims

#### 1. Negligence

Pursuant to A.C.A. §21-9-301, MHSD is immune from suit for negligence:

> "It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state shall be immune from liability for damages. No tort action shall lie against any such political subdivision because of the acts of their agents and employees."

Officials and employees of governmental entities named in §21-9-301 are also immune from suit for negligence in their official capacities. *Matthews v. Martin*, 280 Ark. 345 (Ark. 1983). School officials are specifically immune from suit in their individual capacities, as well. *Davis v. Fulton County, Arkansas*, 90 F.3d 1346, 1353 (8th Cir. 1996). Accordingly, summary judgment is granted on behalf of all Defendants on this claim.

#### 2. Intentional Tort of Discrimination

The Court is unable to find any Arkansas authority establishing a separate state law or common law tort of intentional discrimination, whether on the basis of disability or otherwise. For this reason, summary judgment is granted on behalf of all Defendants on this claim.

### 3. Intentional Tort of Outrage

"A public official is subject to suit for the commission of an intentional tort." *Davis*, 90 F.3d at 1353. There is no statutory immunity for the intentional acts of school districts and their employees; only negligent acts are immune from suit. *Deitsch v. Tillery*, 309 Ark. 401, 407 (Ark. 1992). Under Arkansas law, a plaintiff must demonstrate four elements to establish the tort of outrage: 1) that the defendants intended to inflict emotional distress, or should have recognized emotional distress as a likely result; 2) that the defendants' conduct was extreme, outrageous, and utterly intolerable in a civilized community; 3) that the defendants' actions caused anguish or distress to the plaintiff; and 4) that the emotional distress suffered was severe and of a type that no reasonable person should be expected to endure. *Deitsch*, 309 Ark. at 406.

Traditionally, courts have taken a very narrow view of claims purporting to arise to the tort of outrage. *Shepherd v. Washington Co.*, 962 S.W.2d 779, 792 (Ark. 1998). The Court finds that the facts alleged by Plaintiff, although disturbing and concerning, do not rise to the level of extreme and outrageous conduct sufficient to support a claim of outrage. Accordingly, summary judgment as to Plaintiff's claim for outrage is granted.

## IV. Conclusion

Defendants' Motion for Summary Judgment (Doc. 15) is **GRANTED IN PART AND DENIED IN PART** as follows:

Summary judgment on Plaintiff's §1983 and constitutional claims is **GRANTED** with respect to Defendant MHSD and with respect to Defendants Scriber, Atkinson, McWilliams, White, and Fowler, in their official capacities; and summary judgment on Plaintiff's §1983 claims is **DENIED** with respect to Defendants Scriber, Atkinson, McWilliams, White, and Fowler, in their individual capacities;

Summary judgment on Plaintiff's Rehabilitation Act and ADA claims is **GRANTED** with respect to all individual Defendants, in both their individual and official capacities, and **DENIED** with respect to Defendant MHSD;

Summary judgment on Plaintiff's Title IX claim is **GRANTED** with respect to all individual Defendants, in both their individual and official capacities, and **DENIED** with respect to Defendant MHSD; and

Summary judgment on Plaintiff's tort claims for negligence, intentional discrimination, and outrage is **GRANTED** with respect to all Defendants; and

**THEREFORE, IT IS HEREBY ORDERED** that Defendant MHSD will stand trial for Plaintiff's claims for violations of the Rehabilitation Act, the ADA, and Title IX; and all other claims pending against Defendant MHSD will be dismissed with prejudice; and

**IT IS FURTHER ORDERED** that Defendants Scriber, Atkinson, McWilliams, White, and Fowler will stand trial in their individual capacities only for Plaintiff's §1983 and constitutional claims; and all other claims pending against Defendants Scriber, Atkinson, McWilliams, White, and Fowler will be dismissed with prejudice.

This case remains set for jury trial to begin at 9:00 a.m. on November 5, 2012 in Fort Smith.

IT IS SO ORDERED this 18th day of October, 2012.

*/s/ P. K. Holmes, III*
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE